60 F.3d 837
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Michael KIRKLAND, Plaintiff-Appellant,
v.
Greg PROVIENCE, District II Parole Office Director; Larry
Stewart, District II Pre-Parole Office; Marla Barton,
District II Pre-Parole Office; Marty Bland, Medical Tulsa
Community Correctional Center; Winnie Ousely, Medical Tulsa
Community Correctional Center, Michael W. Carr, Warden, Jess
Dunn Correctional Center; Troy Alexander, Case Manager,
Jess Dunn Correctional Center; Dolores Ramsey; Larry A.
Fields; Gary D. Maynard; Lynda Deselms, District II Tulsa;
Jamie Woody, District II Parole Office; Susan B. Loving,
Attorney General, State of Oklahoma; Robert Sanders,
Executive Director, Pardon and Parole Board, all Ect.; Dr.
Dille, Medical Director, DOC; K. Duvall, Director II Parole
Office; J. Gibbs, Medical Jess Dunn Correctional Center;
Stanley Glanz, Tulsa County Sheriff; Don James, Pre-Parole
Office, Defendants-Appellees.
 No. 94-6245.
 United States Court of Appeals, Tenth Circuit.
 Feb. 2, 1995.
 
 Before ANDERSON, BALDOCK and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Mr. Kirkland, a state inmate and pro se litigant, appeals the dismissal of his "Hbeas Corpu and/or Mandamus [sic]" action. The district court granted Mr. Kirkland permission to appeal in forma pauperis. We exercise jurisdiction over the appeal and affirm the decisions of the district court.
 
 
 3
 This case presents the textbook example of the burdens placed upon the courts and officials by the pro se litigant. Mr. Kirkland filed a thirty-four-page complaint containing 120 pages of attachments. Nineteen defendants were named. The complaint was a rambling, nearly incoherent, litany of grievances. The district court concluded that Mr. Kirkland: (1) had filed this pro se action without using the forms provided to pro se litigants, thus compounding the problems of understanding; (2) had probably filed his complaint in the wrong venue; (3) had filed in state court an identical action which was still pending; and (4) had improperly mixed a civil rights complaint with a habeas action. The district court then provided Mr. Kirkland with notice of the apparent defects and give Mr. Kirkland an opportunity to file an amended complaint. Mr. Kirkland reasoned by filing an amended complaint.
 
 
 4
 The next phase of the litigation commenced when the district court ordered a Martinez report.[1] Mr. Kirkland reacted by filing a barrage of discovery motions, notwithstanding the fact that the district court had stayed discovery pending receipt of the Martinez report. Defendants then filed a voluminous Martinez report and a motion to dismiss the amended complaint for failure to state a claim upon which relief could be granted.
 
 
 5
 The district court then gave Mr. Kirkland notice that it would treat the motion and the Martinez report as a motion for summary judgment and informed Mr. Kirkland of the requirements of Fed.R.Civ.P. 56. Mr. Kirkland then filed a voluminous response and numerous motions.
 
 
 6
 The magistrate judge then filed a lengthy written report and recommendation. The magistrate judge opined the gist of Mr. Kirkland's complaint was based upon two allegations: (1) the defendants' failure to provide Mr. Kirkland with a psychotropic drug, and (2) the defendants denied Mr. Kirkland due process when they disciplined him for escape; and the complaint also raised numerous minor issues.
 
 
 7
 The magistrate judge's report and recommendation was thorough and meticulous. It clearly framed, considered and resolved each and every assertion raised by Mr. Kirkland. The bottom line was that Mr. Kirkland had no action against the defendants and recommended summary judgment be granted for the defendants. The district court ratified and adopted the magistrate judge's report and recommendation and granted defendants summary judgment.
 
 
 8
 Mr. Kirkland appeals this decision. He appeals by asserting the district "[c]ourt has failed to follow case law when ruling on the civil suite [sic] [and] the defendants have violated the plaintiff's constitutional rights in which they ... district court will not protect in this case." Mr. Kirkland then attached to this "brief" his original "Hbeas Corpu and/or Mandamus [sic]" action.
 
 
 9
 Mr. Kirkland's appeal has no merit. We affirm for substantially the same reasons set forth by the magistrate judge in his thorough and well reasoned report and recommendation, a copy of which is attached. The decision of the district judge is AFFIRMED.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT FOR THE
 WESTERN DISTRICT OF OKLAHOMA
 Michael Kirkland, Plaintiff
 
 10
 vs.
 
 
 11
 Oklahoma Department of Corrections, et al., Defendants
 
 CIV-93-509-T
 REPORT AND RECOMMENDATION
 
 12
 ARGO, United States Magistrate Judge.
 
 
 13
 Plaintiff, a state prisoner appearing pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. Sec. 1983 alleging violations of his constitutionally protected rights. His original complaint consisted of 34 pages with over 120 pages of attachments. He named 19 defendants, including the Oklahoma Attorney General, the Tulsa County Sheriff, and various Oklahoma Department of Corrections' (DOC) officials. The allegations of the original complaint can be grouped as follows: 1) denial of adequate medical care by the Defendants' failure to provide him with the psychotropic drug, Tofranil, while he was on pre-parole conditional supervision (PPCS) and 2) denial of due process in a disciplinary proceeding brought against him for escape while he was on PPCS.
 
 
 14
 Upon initial review of the complaint, the undersigned noted several deficiencies. First, the Plaintiff had not used the form complaint required of pro se prisoners by Local Court Rule 5. Secondly, he had mixed several different actions for relief including a mandamus action, habeas corpus action and civil rights action. Accordingly, the undersigned entered an order dated April 13, 1993 directing the Plaintiff to file an amended complaint, using the forms required by our local court rule.[1] Further, as there are additional considerations for habeas actions, such as exhaustion of state remedies, Plaintiff was advised to file separate actions for his Sec. 1983 claim and for his habeas corpus matter.
 
 
 15
 After receiving the April 13, 1993 order, the Plaintiff filed an amended complaint pursuant to 42 U.S.C. Sec. 1983 on the form required by the local court rule.[2] In his form amended complaint, the Plaintiff names three defendants; the DOC, its former director and its current director. In conjunction therewith, he filed an "amended brief in support" of his complaint in which he lists as Defendants the three Defendants listed in his amended complaint and four additional Defendants; the Oklahoma Attorney General, the designee for the director of the DOC who answered Plaintiff's disciplinary appeal, the executive director of the Oklahoma Pardon and Parole Board and the Oklahoma DOC medical director. These seven Defendants are the only Defendants that have been served in this action.[3]
 
 
 16
 On several occasions, the Plaintiff has filed pleadings in an attempt to supplement his complaint with new allegations. The majority of the issues raised in these supplemental pleadings are either expanding on or related to issues raised in the original complaint. To the extent that the issues raised are related to issues already before the Court, the pleadings have been considered. However, new allegations which are unrelated to the initial complaint have not been considered, evaluated or addressed. In one pleading, the Plaintiff appears to be raising issues of denial of adequate medical care for the treatment of his broken jaw, sustained in an automobile accident in September 1991. Plaintiff received treatment for this at the V.A. Medical Center in Oklahoma City. This claim is simply unrelated to his initial complaint and involves separate facts and allegations which are not adequately before the undersigned. As this is a separate issue, the Plaintiff would be entitled to bring these allegations in a separate lawsuit.
 
 
 17
 While the Plaintiff's pleadings are rambling in nature, extremely redundant and difficult to decipher, the undersigned interprets his amended complaint and supplemental pleadings to raise three main issues and some additional side issues. The Plaintiff contends that:
 
 
 18
 1) he was denied adequate medical care when he was denied the psychotropic drug Tofranil, for 14 days while on PPCS. He contends that when he began taking the drug after the 14-day absence, he became confused and disoriented which caused him to miss his reporting day with his PPCS officer;
 
 
 19
 2) his rights to due process were violated in numerous ways during the prison disciplinary action for the escape offense. He maintains that: (a) it was inappropriate to charge him with escape; (b) the disciplinary hearing was not held timely; (c) there was insufficient evidence to find him guilty of escape; (d) the disciplinary hearing should have been held after his preliminary hearing in Tulsa County on the criminal charges for escape; (e) he had no access to a law library for purpose of his appeal of the disciplinary action; (f) the DOC investigator failed to investigate his claims regarding his medication and the effect it had on him; and (g) he was not provided an attorney for his disciplinary proceeding and he was not happy with his staff representation; and
 
 
 20
 3) his transfer to the Jess Dunn Correctional Center (JDCC) and later to the William S. Key Correctional Center (WSKCC) without a reclassification hearing violated his rights.
 
 
 21
 Moreover, the Plaintiff raises four side issues for the Court's consideration. First, he maintains that the Oklahoma Attorney General should not be allowed to represent the other Defendants. Second, he argues that the parole board failed to consider him for parole after the required one-third service of his sentence. Third, he contends that the staff at the WSKCC are withholding from his account money orders which his wife has sent to him. Finally, the Plaintiff asserts that the handwritten statement on one of his DOC assignment forms, which reads "he is a nut," is slanderous and in violation of his rights.
 
 
 22
 On July 13, 1993, the Defendants filed a motion to dismiss. By an order dated July 16, 1993, the motion was converted to a motion for summary judgment. Plaintiff has responded to the motion and thus, it is at issue. The matter has been referred to the undersigned Magistrate Judge for initial proceedings pursuant to 28 U.S.C. Sec. 636(b)(1)(B) and for the reasons stated herein, it is recommended that the Defendants' motion be granted.
 
 
 23
 Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court views the evidence and the inferences to be drawn therefrom in the light most favorable to the non-moving party. Manders v. State of Oklahoma ex rel. Department of Mental Health, 875 F.2d 263, 264 (10th Cir.1989), citing Barber v. General Electric Company, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." Id. Factual disputes that are irrelevant or unnecessary will not be counted. Id.
 
 
 24
 Furthermore, a Martinez report is treated as an affidavit, as is the Plaintiff's complaint if it alleges facts based upon the Plaintiff's personal knowledge and has been sworn under penalty of perjury. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991). In addition, "a movant is not always required to come forward with affidavits or other evidence to obtain summary judgment; once the movant points out an absence of proof on an essential element of the non-movant's case, the burden shifts to the non-movant to provide evidence to the contrary." Id. at 1111, n. 5, citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 
 25
 The relevant facts in addressing the Plaintiff's claim of denial of medical care are as follows. While on PPCS status, the Plaintiff was to remain on his Tofranil medication which he took, and presumably still takes, for anxiety and depression. In order to obtain a refill, the procedure was for the Plaintiff to drop off his medication at the Tulsa Community Corrections Center (TCCC). It is undisputed that he dropped off his medication for refill at TCCC on March 4, 1992. It is further undisputed that the prescription was refilled and returned to the pre-parole office on March 5, 1992. However, the Plaintiff did not actually receive his medication until March 18, 1992. Therefore, the Plaintiff was without his medication for 14 days. There are absolutely no allegations of any medical problems during that 14-day period. Rather, the Plaintiff contends that he suffered confusion and disorientation after being placed back on the medication after the 14-day absence. As noted, he contends that this caused him to miss his scheduled reporting date with his PPCS officer on March 25.
 
 
 26
 The Plaintiff originally stated that he attempted on a daily basis to pick up his medication. However, the pre-parole office records show that the Plaintiff was only in the office on March 4, when he left his medication, and on March 11 and March 18, 1992. The Plaintiff now contends that he had friends go to the pre-parole office to pick up his medication and that he called the office daily. Regardless of who went to the office to pick up the medication and when, it is undisputed that someone at the pre-parole office searched for the medication each time an inquiry was made. Mary Carter, Plaintiff's witness, confirms that the individuals at the pre-parole office searched for the medication when she made inquiries. No request to pick up the medication was ignored. Rather, the medication simply could not be located. The facts fail to show a conspiracy to deprive Plaintiff of his medication or to deny him adequate medical care.
 
 
 27
 To establish an unconstitutional denial of medical care, the Plaintiff must demonstrate deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104-105 (1976). Under the Eighth Amendment, this requires a showing of "unnecessary and wanton infliction of pain." Daniels v. Gilbreath, 668 F.2d 477, 481 (10th Cir.1982). See also, Whitley v. Albers, 475 U.S. 312, 319 (1986) ("it is obduracy and wantonness, not inadvertence or error in good faith that characterize the conduct prohibited by the Eighth Amendment"). Where there are allegations based on inadequacy of treatment, the complaint fails to state a claim of "deliberate indifference." Daniels, 668 F.2d at 482. At most, an allegation of failure to diagnose or adequately treat a condition states a claim for medical malpractice, which does not raise a cognizable constitutional violation. Id., citing Estelle, 429 U.S. at 105-106.
 
 
 28
 With regard to the time lapse in receiving his medicine, Plaintiff has simply not stated a claim for deliberate indifference. At most, he might state a claim for inadvertence or negligence. Moreover, the Plaintiff has not shown that despite his making every effort to obtain his medication, which he clearly did not, it was refused him. Viewing the evidence most favorable to the Plaintiff, it appears that the medication was misplaced which does not indicate deliberate indifference but negligence.
 
 
 29
 Moreover, it must be remembered that only serious medical needs must be attended to in order to avoid a deliberate indifference finding. Hudson v. McMillian, 112 S.Ct. 995 (1992).
 
 
 30
 Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious".
 
 
 31
 Id. at 1000. The Plaintiff does not contend that he suffered any medical problems, let alone serious medical needs, due to his failure to receive medication for 14 days. He does complain of experiencing confusion and disorientation due to being placed back on the medication. While suffering from confusion and disorientation may have caused the Plaintiff discomfort and perhaps other problems, it can hardly be said that these conditions are serious medical problems. This is especially true in light of Plaintiff's contention that these side effects are only temporary. Therefore, the Plaintiff's claim for violation of his Eighth Amendment rights due to denial of adequate medical care must fail.
 
 
 32
 The majority of the Plaintiff's remaining claims involve his prison disciplinary proceeding. The relevant facts in resolving those contentions are as follows. Plaintiff alleges that a result of his state of confusion and disorientation, he failed to report on his scheduled reporting date, March 25, 1992, which was exactly one week after he was placed back on his medication. Since Plaintiff did not report as scheduled, his pre-parole officer went to the Plaintiff's apartment on March 26, but the Plaintiff did not reply to repeated knocking on the door. The pre-parole officer checked the restaurant where the Plaintiff said he was employed but the manager stated that the Plaintiff was not there and, in fact, had never worked there. Later that same day, the officer spoke with the manager of the apartments where the Plaintiff supposedly lived. She indicated that the Plaintiff was not there and she had not seen him for a week although his belongings were still in the apartment. According to the manager, the Plaintiff had been served with an eviction notice but had failed to appear at the March 25, 1992 court date on the matter. On March 30, 1992, the pre-parole officer supplied information regarding the Plaintiff's failure to appear to the Tulsa County District Attorney. Criminal charges of escape were filed in the Tulsa County District Court and a warrant was issued for the Plaintiff's arrest. The Plaintiff was arrested on those charges on April 5, 1992.
 
 
 33
 A hold for the DOC was placed against the Plaintiff, and on April 13, 1992, the DOC verified that the Plaintiff was in custody in the Tulsa County jail. In addition to the criminal charges, prison disciplinary proceedings were instituted against the Plaintiff. An offense report for the charge of escape was accepted by the PPCS team supervisor and delivered to the Plaintiff on April 13. The Plaintiff was served with a copy of the investigator's report on April 14. The investigator took the Plaintiff's statement with regard to the charges, and Plaintiff listed Mary Carter as a witness who could testify as to his behavior without his medication. The investigator took the written statement of Ms. Carter, in which she reported that without his medication, the Plaintiff became disoriented at times. The Plaintiff's disciplinary hearing was set for April 17, but was postponed until April 20 for unknown reasons. On April 20, he was found guilty of escape due to the chronological record of his reporting habits while on PPCS and his disappearance from his apartment and work. The disciplinary hearing officer specifically found that there was no medical evidence to substantiate Plaintiff's claim of forgetfulness and disorientation due to being without his medication. As a result of the proceedings, the Plaintiff lost all of his earned credits and was no longer eligible for PPCS.
 
 
 34
 An inmate on PPCS is subject to a disciplinary proceeding just like any other inmate in DOC custody. 57 Okla.Stat. Sec. 365. PPCS is a pre-parole or pre-release program unlike parole which is a program after release from DOC custody. Title 57 Okla.Stat. Sec. 365(F) specifically subjects inmates on PPCS to penalties for escape. "Should an inmate violate any rule or condition 'during the period of community supervision,' he shall be subject to 'disciplinary proceedings as established by the Department of Corrections.' " Barnett v. Moon, 852 P.2d 161, 163 (Okla.Crim.App.1993), citing 57 Okla.Stat. Sec. 365(E). In Barnett, the Oklahoma Court of Criminal Appeals stated that a disciplinary proceeding could be used to remove an inmate from PPCS and in doing so the inmate was only entitled to the due process protections set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). Thus, the Wolff standard will be considered in addressing Plaintiff's claims regarding the disciplinary hearing.
 
 
 35
 Procedural due process requires that an inmate be given notice of the charges on which the action is based, "in order to inform him of the charges and enable him to marshall the facts and prepare a defense." See Wolff v. McDonnell, supra. Specifically, in a disciplinary hearing for serious misconduct, procedural due process requires: a disciplinary hearing prior to the loss of earned credits (which is a potential punishment for escape), advance written notice of the charges, an opportunity to call witnesses, the opportunity to present documentary evidence in his defense, a written statement by the fact-finder of the evidence relied on and a written statement of the reasons for the decision. Wolff v. McDonnell, 418 U.S. at 563.
 
 
 36
 The Plaintiff received an offense report and investigation report on April 13 and 14, 1992. These documents contained an explanation of the charges and the evidence to be used against him. The Plaintiff elected to have staff representation which he was provided, although he disapproves of the representation. He was given the opportunity to present evidence in the form of witnesses and documents or physical evidence. A written statement from Mary Carter, the only witness which he requested, was presented. This statement supports the Plaintiff's statements regarding his state of confusion on being without his medication and upon being placed back on it. The Plaintiff received a statement regarding the evidence relied on in finding him guilty and the reasons for the punishment imposed. Further, the punishment he received was in accordance with the prison regulation for escape. Clearly, he received all the process he was due with regard to his disciplinary hearing. His rights are not violated just because he does not agree with the decision.
 
 
 37
 Plaintiff also asserts that the DOC violated several prison regulations during the disciplinary hearing. However, unless a prison regulation or statute creates a liberty interest, the inmate is not entitled to due process prior to enforcement of the regulations. Hewitt v. Helms, 459 U.S. 460 (1983); Frazier v. Dubois, 922 F.2d 560 (10th Cir.1990). Although the DOC regulations do set forth the general procedures to be followed in disciplinary proceedings, the majority of these regulations, except as set forth in Wolff, supra, do not create a liberty interest. A procedural guideline must delineate substantive limitations or set forth specific substantive entitlement before a protected liberty interest can be found. Hewitt, 459 U.S. at 472. The availability of a hearing, by itself, is not enough to create an enforceable liberty interest. Olim v. Wakinekona, 461 U.S. 238 (1983).
 
 
 38
 The Plaintiff argues that the DOC's failure to follow certain regulations to the letter, as he interprets them, violates his constitutional rights. Specifically, he contends that, if anything, he should have been charged with failure to comply with his PPCS plan, a Class B offense, as opposed to escape, a Class A offense. Clearly, the nature of the charges brought against an inmate is discretionary with the DOC. In the written agreement entered into by Plaintiff upon receiving his PPCS classification, he was notified that if he could not be located within a 24-hour period, he would be considered as "escaped." Therefore, the charge of escape was available under the circumstances and the Plaintiff had notice of that possibility. The DOC did not abuse its discretion in charging him with escape.
 
 
 39
 The Plaintiff also contends that his hearing was not held timely. As a PPCS inmate, the Plaintiff was entitled to have a hearing on charges brought against him within five days of the date he was notified of the charges. The Plaintiff received his offense report on April 13, 1992 and his disciplinary hearing was set for April 17, 1992, clearly within the five-day period. However, for reasons not shown in the record, the Plaintiff's hearing was postponed until April 20, which was outside the five-day period. However, the same DOC regulations which require the hearing to be held within five days also allow it to be postponed for good cause shown. Although the good cause is supposed to be noted in the file, there is no explanation offered here for the postponement in this case. However, the Court takes judicial notice that the five-day period would have expired on April 18, 1992, a Saturday. The hearing was held on April 20, 1992, the Monday following the original hearing date. The fact that the regulation allows for postponement of the hearing shows that it does not create substantive limitations or a liberty interest. Even if the undersigned were to find that the failure to have the hearing within the five-day period was a violation of the Plaintiff's liberty interest, the Plaintiff has not shown that he has suffered any damage by having his disciplinary hearing on a Monday as opposed to the previous Friday.
 
 
 40
 In his next two allegations, the Plaintiff contends that there was not sufficient evidence to find him guilty of escape and that his hearing should not have been held until after his preliminary hearing on the Tulsa County criminal charges which was set for April 30. However, the Plaintiff had no right to have his hearing postponed until after April 30. In fact, as the Plaintiff has already argued, the regulations required him to have a hearing by Saturday, April 18, 1992. Further, as discussed infra, the result of the Plaintiff's disciplinary proceedings was not dependant upon the disposition of the criminal charges in Tulsa County.
 
 
 41
 The Plaintiff next argues that his due process rights were violated when he was administratively disciplined by the DOC on a charge of escape when those same charges were dropped by the Tulsa County prosecutor. The Plaintiff believes that the different result occurred because in the criminal case he was able to document the effect that the lack of medication had on him, especially after he resumed taking it, while he was not able to do so at the administrative misconduct hearing. However, the burden of proof at a prison disciplinary hearing is less than the beyond a reasonable doubt standard required for a criminal conviction. A disciplinary hearing only requires that the case be proven by a preponderance of the evidence. See Superintendent v. Hill, 472 U.S. 445 (1985). Therefore, it is possible for an inmate to even be acquitted on the criminal charges and yet still be subject to discipline on the same facts. The standard of review for a disciplinary proceeding is not de novo but whether there is some evidence in the record to support the decision. Id.
 
 
 42
 The guilty finding in the disciplinary proceeding is supported by evidence in the record. The Plaintiff as a condition of his PPCS agreed to report to his pre-parole officer on required and predetermined dates. The Plaintiff was scheduled to report on March 25, 1992, but failed to do so or to call to inform his pre-parole officer as to why he would be unable to report. Further, the Plaintiff was required to keep his officer advised as to his address and place of employment. On March 26, his PPCS officer attempted to locate the Plaintiff to no avail. In fact, there was no communication with the Plaintiff until after he was taken into custody on the escape charges. While the Plaintiff does not dispute his failure to report, he contends that his failure was due to his confusion brought on by his being deprived of his medication for 14 days ending on March 18, 1992. Therefore, the Plaintiff was back on his medication for an entire week before he failed to report on March 25. The Plaintiff maintains that being without his medication caused him to be confused. Further, he explains that starting his medication after the two-week cessation caused him to experience confusion and disorientation as a side effect.
 
 
 43
 In support of his contention, the Plaintiff submits information on the drug in question, Tofranil. However, this information does not support the Plaintiff's statements. It states that one should not stop taking medication without first checking with one's doctor. It also says that the effects (not side effects) of the medication may continue for 3 to 7 days after one stops taking the drug. Also, the drug may cause one to be less alert than normal. There is a warning in the information which states that one should stop taking this medicine and get help immediately if one experiences confusion or disturbed concentration. No where, in the information provided by the Plaintiff, does it state that a patient may experience confusion and disorientation after starting the drug which will subside during continued usage. Further, an affidavit from a licensed practical nurse employed by the TCCC states that Plaintiff should not experience such side effects after only being off the medication for two weeks. In summary, there is some evidence in the record to support the disciplinary decision and little to support the Plaintiff's defense to his escape.
 
 
 44
 Next, the Plaintiff contends that the appeal process from the disciplinary decision violates his due process rights. His allegation involves the 15-day time period in which to appeal the decision and the fact that he was still incarcerated in the Tulsa County Jail during the applicable period. However, most of the Plaintiff's allegations are very conclusory. Mere conclusory allegations with no supporting factual averments are insufficient to state a constitutional claim. Wise v. Bravo, 666 F.2d 1328, 1333 (10th Cir.1981). The Plaintiff did appeal the disciplinary decision through the appropriate DOC channels and had his appeals decided on their merits. However, he contends that he was denied access to a law library during the time period in which he had to perfect his appeal. From a review of his appeal from the disciplinary proceeding, it appears that the basis for his appeal was factual, not legal. His argument was that his medication caused him to be confused and he forgot to report as required. There has been no showing of a need for the Plaintiff to have access to a law library in order to file his appeal. Moreover, the Plaintiff does not allege that he even asked for legal materials to perfect the appeal.
 
 
 45
 The Plaintiff further argues that the DOC investigator failed to investigate his claim regarding the effect of the medication. The investigator did note the Plaintiff's contention that his medication caused him to be confused and that is why he failed to report. Further, the investigator contacted Mary Carter who confirmed the Plaintiff's statements about the medication and the effect the denial of it had on the Plaintiff. The disciplinary officer considered these statements and found no evidence to support these contentions. Thus, Plaintiff's argument is without merit.
 
 
 46
 Finally, with regard to his disciplinary hearing, the Plaintiff claims that he should have been appointed an attorney to represent him at his hearing. The DOC regulations allow the Plaintiff to have a staff representative but they give no right to an attorney. In support of his contention, the Plaintiff cites Craig v. Hocker, 405 F.Supp. 656 (D.Nev.1975), which states that an inmate is entitled to an attorney representative in a disciplinary hearing if the inmate could be subject to state criminal penalties on the same charges. However, the case on which Craig relies was overruled by the Supreme Court in Baxter v. Palmigiano, 425 U.S. 308 (1976). The Ninth Circuit in Smith v. Sumner, 994 F.2d 1401 (9th Cir.1993) specifically recognized that the law on which Craig relied was no longer good law. There is simply no due process right to an attorney in a disciplinary proceeding. Thus, Plaintiff's claims regarding the disciplinary hearing are without merit.
 
 
 47
 As his third main claim for relief, the Plaintiff claims that his rights were violated when he was transferred to JDCC and later to WSKCC without a reclassification hearing. Prior to the Oklahoma Court of Criminal Appeals' decision in Barnett v. Moon, supra, Oklahoma law appeared to afford a PPCS inmate the same rights as a parolee. Therefore, it appeared that a PPCS inmate was entitled to a revocation hearing before he could be transferred. However, it is now clear that a PPCS inmate can be removed from PPCS status through a disciplinary proceeding. Thus, an immediate reclassification hearing is no longer necessary as was explained to the Plaintiff in the resolution of his administrative appeal. The Plaintiff was in fact reclassified from PPCS to minimum security although not in the fashion which he felt was required.
 
 
 48
 It is fundamental that the due process clause on its own does not subject an inmate's classification to judicial review. Security classifications and the placement of prisoners are at the heart of prison administration. The Constitution itself creates no independent entitlement to any particular security classification for inmates nor any due process protections in the original classification or any later change in classification. Montanye v. Haymes, 427 U.S. 236 (1976); Meachum v. Fano, 427 U.S. 215 (1976). (Inmate transfer from medium security prison to maximum security prison intrastate does not in itself implicate a Fourteenth Amendment liberty interest, even though there were significant modifications in conditions of confinement.) Inasmuch as these interests do not arise directly from the due process clause and because Plaintiff fails to show that such an interest has been created by the state government through statute, regulation or otherwise, he fails to show a constitutionally cognizable liberty interest with respect to his reclassification.
 
 
 49
 With regard to his side issues, the Plaintiff maintains that he was not considered for parole at the statutory required time after the service of one-third of his sentence. The undisputed facts show that the Plaintiff's parole status was timely reviewed. However, his parole hearing was postponed due to his reclassification from PPCS status caused by the escape charge. Moreover, the Oklahoma statutes governing parole do not establish a liberty interest, protected by specific due process procedures. Shirley v. Chestnut, 603 F.2d 805, 807 (10th Cir.1979). Parole is a privilege and there is no constitutional or inherent right to it. Lustgarden v. Gunter, 966 F.2d 552 (10th Cir.1992), cert. denied, 113 S.Ct. 624 (1992). Thus, this claim is without merit.
 
 
 50
 Further, the Plaintiff argues that the Attorney General should be disqualified from representing the other Defendants in the matter. The relevant Oklahoma statute addressing representation by the Oklahoma Attorney General is 74 Okla.Stat. Sec. 20g(A), which provides:
 
 
 51
 Before any such defense is undertaken, an inquiry shall be made by the Attorney General of the facts on which the action or special proceedings are based. Unless the Attorney General determines that the employee was acting in good faith and in the course of his employment, representation shall not be provided pursuant to this act.
 
 
 52
 A clear reading of this statute indicates that it is the Attorney General that makes the determination of whether the state employee has acted in good faith in carrying out his/her duties, thus entitling the employee to representation. The Attorney General has made that determination, and Plaintiff fails to show why the Attorney General should be disqualified from representing the Defendants.
 
 
 53
 With regard to his confinement in WSKCC, the Plaintiff argues that he is not receiving the mail and money sent to him by his wife. The Plaintiff believes that his mail is being interfered with by WSKCC officials, but he offers absolutely no support for this allegation. Moreover, WSKCC records evidence several receipts of money by the Plaintiff from his wife, all of which have appropriately been placed in his trust account.
 
 
 54
 Furthermore, the Plaintiff contends that his rights have been violated by the handwritten addition to his transfer form which states, "he is a nut." The Plaintiff argues that this statement amounts to slander. However, he does not state who the author of the statement is and there is absolutely nothing shown to reflect who wrote that phrase. It appears to have been done after the completion of the transfer form. Even if the statement is slanderous, the Plaintiff is still not entitled to relief under Sec. 1983. It is important to remember that the Plaintiff has brought a Sec. 1983 action which only entitles one to relief for violations of federal law or the U.S. Constitution. Section 1983 is not a remedy for tort allegations. Certainly, slander alone is not enough to state a constitutional claim. See Paul v. Davis, 424 U.S. 693 (1976).
 
 
 55
 Finally, there are some outstanding motions in this action which should be addressed and resolved. The Plaintiff's request for appointment of counsel should be denied since there is no constitutional right to counsel in a civil proceeding. Miller v. Glanz, 948 F.2d 1562, 1572 (10th Cir.1991) (court has discretion to appoint counsel, based upon complexity and merits of case); Bee v. Utah State Prison, 823 F.2d 397, 399 (10th Cir.1987). As Plaintiff's claims are without merit, there is no need to appoint counsel.
 
 
 56
 The Plaintiff has also filed a motion to compel and a motion to stay proceedings to allow discovery. With respect to the motion to stay, the Plaintiff has filed a subsequent pleading asking that the motion to stay be withdrawn as he has received the manuals which he sought through discovery. Although the Plaintiff has not asked to withdraw his motion to compel, the undersigned considers the motion moot as Plaintiff has asked to withdraw his motion to stay.
 
 
 57
 On July 16, 1993, the Plaintiff filed a motion for default against the Defendants. The Defendants filed a motion to dismiss and the special report on July 13, 1993. Therefore the motion for default should be denied.[4] Additionally, the Plaintiff has filed a motion to enter additional exhibits as part of the record. As already stated, to the extent that this evidence addressed claims in the original or first amended complaint it has been considered. However, to the extent that the Plaintiff is seeking to add additional claims, it is recommended that the motion be denied. Lastly, it is recommended that the Plaintiff's motions to amend filed September 30 and November 24, 1993 be denied except to the extent addressed herein.
 
 RECOMMENDATION
 
 58
 Based on the foregoing, it is the recommendation of the undersigned Magistrate Judge that the Defendants' motion for summary judgment be granted. The parties are advised of their right to object to this Report and Recommendation by May 6th, 1994, in accordance with 28 U.S.C. Sec. 636 and Local Court Rule 39. Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions. Moore v. United States of America, 950 F.2d 656 (10th Cir.1991).
 
 
 59
 ENTERED this 21st day of April 1994.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Martinez v. Aaron, 570 F.2d 317 (10th Cir.1978)
 
 
 [1]
 The order also noted concerns with venue and the fact that it appeared that the Plaintiff had an identical action pending in state court. However, those concerns have been addressed as some of the Defendants do reside within the Western District of Oklahoma and Plaintiff's state court action has been dismissed
 
 
 [2]
 In his amended complaint, Plaintiff still seeks to have his earned credits restored, which is clearly in the nature of habeas relief. To the extent that the Plaintiff is seeking habeas relief, it is recommended that he be required to bring a separate action, setting forth the required information such as exhaustion of state remedies
 
 
 [3]
 To the extent that the Plaintiff is still trying to sue the other Defendants named in the original complaint, the majority of whom reside in Tulsa or the surrounding area, it is recommended that these Defendants be dismissed pursuant to Fed.R.Civ.P. 4(m) as more than 120 days have elapsed without service being effected upon them
 
 
 [4]
 The Defendants were served on May 12, May 13, May 18 and May 25. Therefore, the earliest served Defendant's response should have been filed on July 11, 1993, which was a Sunday, thus giving that Defendant until July 12 to file the pleading. The responsive pleading was filed on July 13, 1993, one day late. The majority of the Defendants were served on May 13 or later. Therefore, a responsive pleading should have been filed on July 13 or later for the majority of the Defendants. All of the Defendants are represented by the Oklahoma Attorney General. It is simply not appropriate to hold a Defendant in default under these facts for filing a responsive pleading one day late